IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| RAPHAELA PITTNER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 18-cv-04370 |
| v. | ) | |
| | ) | Judge Andrea R. Wood |
| ADVOCATE LUTHERAN | ) | |
| GENERAL, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Raphaela Pittner has sued her former employer, Advocate Lutheran General ("Advocate"),[1] and her former supervisor, Chris Sanders, alleging race discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, violation of the Illinois Whistleblower Act ("IWA"), 740 ILCS 174/1 *et seq.*, and intentional infliction of emotional distress ("IIED") under Illinois common law. Now before the Court is Defendants' motion to dismiss all four claims pursuant to Federal Rule of Civil Procedure 12(b)(6). (Dkt. No. 51.) For the reasons given below, the Court grants the motion in part and denies it in part.

**BACKGROUND**

For the purposes of Defendants' motion to dismiss, the Court accepts as true the well-pleaded facts in the Second Amended Complaint ("SAC") and views them in the light most favorable to Pittner as the non-moving party. *See Firestone Fin. Corp. v. Meyer*, 796 F.3d 822, 826–27 (7th Cir. 2015). The SAC alleges as follows.

---

[1] Pittner gives her former employer's name as "Advocate Lutheran General" or "ALG." Defendants, however, contend that the proper name for the entity is Advocate Health and Hospitals Corporation d/b/a Advocate Lutheran General Hospital. (Mot. to Dismiss Second Am. Compl. at 1 & n.1, Dkt. No. 51.)

Pittner is an African-American woman who worked as a phone operator at Advocate, a hospital located in Cook County, Illinois. (SAC ¶ 5, Dkt. No. 49.) Sanders supervised Pittner in her job as a phone operator from September 2016 to June 2017. (*Id.* ¶¶ 5, 11.) In December 2016, Pittner began reporting to Sanders that several of her coworkers were sleeping for hours at a time while they were "on the clock." (*Id.* ¶ 12.) All of the coworkers that she reported were white. (*Id.*)

Instead of addressing the problem, Sanders began harassing and intimidating Pittner. (*Id.* ¶ 14.) He made threatening phone calls to her, issued unwarranted corrective actions against her at work, lowered her evaluation scores, and reduced her hours. (*Id.*) Pittner complained about Sanders's actions to Human Resources at Advocate. (*Id.* ¶ 15.) After she did so, Sanders intensified his harassment. (*Id.*) For instance, he allowed coworkers who worked the overnight shift with Pittner to sleep through the shift, forcing Pittner to handle all the calls and causing her to lose her meal breaks. (*Id.*)

During the six-month period after Pittner first complained about her sleeping coworkers, Sanders issued three corrective actions against her and ultimately recommended her termination (*Id.* ¶ 16.) Pittner describes those corrective actions as unwarranted. (*Id.*) In June 2017, Advocate terminated Pittner's employment on Sanders's recommendation. (*Id.* ¶¶ 20–21.) While Sanders did issue corrective actions against white phone operators who were sleeping on the job, he did not recommend their terminations and Advocate did not terminate them. (*Id.* ¶ 17.)

After Advocate terminated her, Pittner filed a charge with the Equal Employment Opportunity Commission ("EEOC").[2] In the charge, Pittner checked the boxes for retaliation and

---

[2] While Pittner's SAC does not mention her EEOC charge, the *pro se* complaint form that she filed as her original pleading does state that she filed a charge with the EEOC on June 23, 2017. (*Pro Se* Compl. at 2, Dkt. No. 11.) She attached her right to sue letter from the EEOC (but not her EEOC charge) to that form. (*Id.* at 7.) While no version of the complaint has attached Pittner's EEOC charge, Defendants attached a copy to their motion to dismiss. (Mot. to Dismiss, Ex. A., EEOC Charge, Dkt. No. 53-1.) The Court considers the EEOC charge without converting the motion to dismiss into a motion for summary judgment.

discrimination based on color, age, and disability. (EEOC Charge at 1, Mot. to Dismiss, Ex. A.,
Dkt. No. 53-1.) In the first paragraph of the two-paragraph narrative, Pittner claims that she had
received a reasonable accommodation for an unspecified disability.[3] (*Id.*) But after she reported
violations of Advocate's policies, the accommodation was rescinded, she was disciplined, she
received a lowered performance review, and she was suspended from her job and later discharged.
(*Id.*) Then, in the second paragraph of the narrative, Pittner states that she believes she has been
retaliated against and discriminated against because of her age, disability, and color. (*Id.*) She
does not elaborate on the connections between those protected statuses and Advocate's adverse
employment actions. (*Id.*)

In April 2018, the EEOC issued Pittner a right to sue letter. (*Pro Se* Compl. at 8.) Two
months later, Pittner initiated this lawsuit by filing a complaint *pro se*. On the Northern District of
Illinois's standard complaint form, she checked the boxes for discrimination based on age, color,
disability, and race discrimination plus retaliation. (*Id.* at 3–4.) In the narrative Pittner submitted
along with the form, she attributed the discrimination she suffered to her age, her disability, and
her race or color. (*Id.* 16–17.)

In April 2019, after Pittner retained counsel, she filed a First Amended Complaint
("FAC"). (Dkt. No. 37.) The FAC contained three counts against Sanders and Advocate: race
discrimination and retaliation under 42 U.S.C. § 1981, a IWA claim, and a claim under 5 U.S.C.
§ 2302. (FAC ¶¶ 21–36.) After Defendants moved to dismiss the FAC (Dkt. No. 40), Pittner filed

---

*See Wright v. Associated Ins. Cos. Inc.*, 29 F.3d 1244, 1248 (7th Cir. 1994). The charge was mentioned in
the *pro se* complaint and it is essential to the complaint because exhausting remedies before the EEOC is a
mandatory prerequisite to bringing a Title VII claim in federal court. *See Cheek v. W. & S. Life Ins. Co.*, 31
F.3d 497, 500 (7th Cir. 1994).

[3] The documentation Pittner submitted with her *pro se* complaint suggests that the relevant disability was
either an ocular disorder called Stargardt Disease or a dental issue that resulted in multiple teeth being
removed. (*Pro Se* Compl. at 32–36.) Pittner's view appears to be that Advocate took away the
accommodation for her ocular issues by installing bright lights above her workstation. (*Id.* at 24.)

the SAC, which contains a Title VII race discrimination claim, a Title VII retaliation claim, an IWA claim, and a common law IIED claim. (SAC ¶¶ 19–34.) Defendants have now moved to dismiss the latest complaint in its entirety for failure to state a claim. (Dkt. No. 51.)

## DISCUSSION

To survive a motion under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This pleading standard does not necessarily require a complaint to contain detailed factual allegations. *Twombly*, 550 U.S. at 555. Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Adams v. City of Indianapolis*, 742 F.3d 720, 728 (7th Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678).

### I.       Title VII Race Discrimination Claim

In Count I, Pittner claims that Advocate and Sanders violated Title VII by terminating her because of her race. As discussed below, the Court dismisses the claim against Sanders with prejudice because Title VII does not provide for individual liability for supervisors. But the Court denies Defendants' motion to dismiss the claim against Advocate.[4]

---

[4] In her response brief, Pittner contends that her race discrimination complaint is based on both Title VII and 42 U.S.C. § 1981. (Resp. in Opp'n to Mot. to Dismiss at 2, Dkt. No. 63.) Notably, however, Pittner seems to point to the FAC, which references § 1981 but is no longer the operative complaint. (*Id.*) The SAC makes no mention of § 1981. Instead, it says that the federal claims are based on Title VII and on the Fourteenth Amendment to the United States Constitution. (SAC ¶¶ 1, 19.) There is thus no claim under § 1981 in the SAC, and the plaintiff cannot add a new claim in a response brief. *See Pirelli v. Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreens Co.*, 631 F.3d 436, 488 (7th Cir. 2011). In addition, to the extent that Pittner's claims are based on the Fourteenth Amendment, the Court dismisses the claims because neither Advocate nor Sanders is a state actor. *See, e.g.*, *Tom Beu Xiong v. Fischer*, 787 F.3d 389, 397–98 (7th Cir. 2015).

### A.     Exhaustion of Administrative Remedies

In general, "a Title VII plaintiff cannot bring claims in a lawsuit that were not included in her EEOC charge." *Cheek v. W. and S. Life Ins. Co.*, 31 F.3d 497, 500 (7th Cir. 1994) (citing *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 47 (1974)); *see also Moore v. Vital Prods., Inc.*, 641 F.3d 253, 256 (7th Cir. 2011). While that rule is not jurisdictional, "it is a condition precedent with which Title VII plaintiffs must comply." *Cheek*, 31 F.3d at 500. Defendants contend that Pittner's Title VII race discrimination claim must be dismissed because she failed to present it to the EEOC.

The test for determining "whether an EEOC charge encompasses the claims in a complaint . . . grants the Title VII plaintiff significant leeway." *Id.* A plaintiff may bring Title VII claims if there is a reasonable relationship between the allegations in the EEOC charge and the claims in the complaint, and the claims in the complaint could reasonably have been expected to grow out of an EEOC investigation of the allegations in the EEOC charge. *Id.* Put simply, even if a plaintiff does not include certain claims in his EEOC charge, she may still include them in his complaint if they are "like or reasonably related to the allegations of the EEOC charge and growing out of such allegations." *Moore*, 641 F.3d at 256 (internal quotation marks omitted). And to be "like or reasonably related," the relevant claim and EEOC charge "must, at a minimum, describe the same conduct and implicate the same individuals." *Id.* (internal quotations omitted). While the Court will consider which forms of discrimination Pittner checked off on the EEOC charge form, "[w]hat boxes . . . are checked on the EEOC form do not necessarily control the scope of a subsequent civil complaint." *Kristufek v. Hussmann Foodservice Co.*, 985 F.2d 364, 368 (7th Cir. 1993). If the narrative on the charge form reasonably relates to a civil claim in court, the claim may move forward even if the plaintiff did not check the appropriate box on the form.

*See, e.g.*, *id.* (plaintiff who only checked the age discrimination box could proceed with retaliation claim); *Jenkins*, 538 F.2d at 167 (plaintiff who only checked the race/color box could proceed with sex discrimination claim).

Defendants' primary argument for dismissal of the Title VII race discrimination claim is that Pittner failed to exhaust the claim because she checked the box for color discrimination—but not race discrimination—on her EEOC charge form. Race is a broad category of discrimination that covers discrimination for racial or ethnic origin or characteristics associated with racial or ethnic origin. Color is a narrower and less common type of discrimination that "arises when the particular hue of the plaintiff's skin is the cause of the discrimination." *Sullivan v. Presstronics, Inc.*, No. 96 C 7436, 1997 WL 327126, at *2 (N.D. Ill. June 11, 1997). Although there is obvious overlap between the concepts of race and color, color discrimination is a distinct cause of action under Title VII. *See id.*

As Defendants note, there is extensive case law to the effect that alleging race discrimination before the EEOC does not necessarily exhaust a claim for color discrimination.[5] Defendants contend that if exhausting a race claim does not exhaust a color claim, then exhausting a color claim does not exhaust a race claim. At least for purposes of this case, however, the Court disagrees. A claim for color discrimination will almost always implicate a person's race or ethnic origin. In this case, Pittner's EEOC charge made a general reference to discrimination based on color but did not make specific references to discrimination based on skin

---

[5] *See Nickerson v. US Airways, Inc.*, No. 15 C 2970, 2016 WL 3563807, at *4 (N.D. Ill. July 1, 2016); *Evans v. Folding Guard Co.*, No. 15C 7694, 2016 WL 233095, at *2 (N.D. Ill. Jan. 20, 2016); *Williams v. County of Cook*, 969 F. Supp. 2d 1068, 1078–79 (N.D. Ill. 2013); *Howell v. Rush Copley Med. Grp. NFP*, No. 11 C 2689, 2012 WL 832830, at *3 (N.D. Ill. Mar. 12, 2012); *Davis v. Quebecor World*, No. 01 C 8014, 2002 WL 27660, at *1 (N.D. Ill. Jan. 10, 2012); *Thompson v. Fairmont Chi. Hotel*, 525 F. Supp. 2d 984, 989 (N.D. Ill. 2007); *Jefferson v. City of Chicago*, No. 97 C 4895, 1999 WL 116223, at *2 (N.D. Ill. Feb. 26, 1999). *Sullivan*, 1997 WL 327126, at *2.

tone. Because the term "color" has long been used as a synonym for "race," and Pittner's charge

does not refer to skin tone, an EEOC investigator reviewing would likely investigate race

discrimination upon reviewing the charge. The Court thus finds that the race discrimination claim

in the SAC would be expected to grow out of an investigation of the color discrimination claim

included in the EEOC charge.

Defendants protest that Pittner failed to include sufficient factual details in her EEOC

charge for the Court to determine that it is like or reasonably related to the race discrimination

claim in the SAC. In the SAC, Pittner alleges that she reported her coworkers to Sanders for

violating company policy, Sanders initiated unwarranted disciplinary actions against her, and then

Advocate fired her with race as a motivation. (SAC ¶¶ 19–22.) Pittner's EEOC charge,

meanwhile, states that "I reported violations of Respondent's policy. Subsequently, I have been

disciplined, received a lower performance review and suspended" and later discharged. (EEOC

Charge at 1.) There is thus a close factual connection between the EEOC charge and the

allegations in the SAC revolving around Pittner's reports to Sanders, Sanders's disciplinary

actions, and Advocate's termination. *Cf. Cheek*, 31 F.3d at 501 ("[T]he EEOC charge and the

complaint must, at minimum, describe the ***same conduct*** and implicate the ***same individuals***.").

The connection in the charge between Pittner's race and her termination is relatively loose.

The sentences quoted above come from a paragraph in which Pittner primarily discusses her

disability, not her race. And in the only other paragraph in the charge, Pittner alleges age,

disability, and color discrimination without explanation. Read as a whole, however, the charge

alleges that the forms of discrimination and retaliation Pittner suffered all related to the policy

violations she reported to Sanders and Sanders's subsequent disciplinary actions against her. And

EEOC charges completed by laypersons "need not . . . charge each and every fact that combines

to form the basis of each claim in her complaint." *Cheek*, 31 F.3d at 500. By stating that she suffered what she termed "color" discrimination after reporting policy violations to her supervisor, Pittner alerted the EEOC to the facts behind her race discrimination charge and to her claim about Defendants' intent. *Cf. EEOC v. Concentra Health Servs., Inc.*, 496 F.3d 773, 781 (7th Cir. 2007) ("We have stated that a plaintiff alleging employment discrimination on the basis of race . . . may allege the defendant's intent quite generally: I was turned down for a job because of my race is all a complaint has to say." (internal quotation marks omitted)). The facts in the SAC could, moreover, be expected to have grown out of an EEOC investigation. Based on the charge, an investigator would likely have approached the case by investigating whether there was race (and age and disability) discrimination related to Pittner's reports to her supervisor and subsequent disciplinary measures.

The Court therefore denies Defendants' motion to dismiss the Title VII race discrimination claim against Advocate.

### B.    Individual Liability

Although Pittner's race discrimination claim against Advocate survives Defendants' motion to dismiss, her race discrimination claim against Sanders does not. According to her complaint, Sanders was Pittner's supervisor, not her employer. (SAC ¶ 6.) And while an employee may, in some circumstances, sue an employer for a supervisor's discriminatory actions, Title VII does not allow for individual liability for supervisors. *See Williams v. Banning*, 72 F.3d 552, 555 (7th Cir. 1995). Pittner's race discrimination claim against Sanders is, therefore, dismissed with prejudice.

## II.      Title VII Retaliation Claim

Pittner also asserts a Title VII retaliation claim as part of Count I. Title VII forbids an employer from retaliating against an individual "because [s]he has opposed any practice made an unlawful employment practice by this subchapter, or because [s]he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). To succeed on a retaliation claim, a plaintiff must prove that she "engaged in statutorily protected activities." *Id.* Because Pittner did not allege that she engaged in any such activities, she fails to state a retaliation claim against Defendants.

An employee engages in protected activity by either "(1) filing a charge, testifying, assisting or participating in any manner in an investigation, proceeding or hearing under Title VII or other employment statutes; or (2) opposing an unlawful employment practice." *Id.* Pittner has not made any such allegations. During her employment with Advocate, she did not file any charge or participate in any investigation, proceeding, or hearing under an employment statute. Pittner did file a charge with the EEOC after Advocate terminated her. But that charge is not, standing alone, a basis for a retaliation charge because the alleged retaliatory act—Advocate's termination of Pittner—took place **before** Pittner filed the EEOC charge. *See Leonard v. E. Ill. Univ.*, 606 F.3d 428, 432 (7th Cir. 2010); *Hosick v. Chi. State Univ. Bd. of Trs.*, 924 F. Supp. 2d 956, 976 (N.D. Ill. 2013).

Neither has Pittner alleged that she opposed an unlawful employment practice. A plaintiff may bring a claim under Title VII based on retaliation for opposing a practice made unlawful by Title VII. *See* 42 U.S.C. § 2000e-3(a). Pittner, however, alleges that she reported to her supervisor that some of her coworkers were sleeping on the job and then later reported to Human Resources that her supervisor was harassing her instead of handling the situation. (SAC ¶¶ 12, 15.) Pittner

may have reported violations of some law. But the facts alleged in the SAC do not indicate that she was opposing a racially discriminatory practice or any other practice outlawed by Title VII. And while she reported Sanders's harassment to Human Resources, she has not alleged that the harassment—as opposed to her eventual termination—was racially motivated. (SAC ¶¶ 20–22.) *See Northington*, 712 F.3d at 1065; *see also Tank v. T-Mobile USA, Inc.*, 758 F.3d 800, 809 (7th Cir. 2014) ("Complaining about a co-worker's actions is not statutorily protected expression when the complained of conduct does not relate to race or national origin."). Therefore, the Court dismisses Pittner's retaliation claim against Advocate. Furthermore, as noted above, Title VII does not allow for individual liability for supervisors. *See Williams*, 72 F.3d at 555. Therefore, the Court dismisses Pittner's Title VII retaliation claim against Sanders as well.

### III.    Illinois Whistleblower Act Claim

Pittner's claim against Defendants in Count II arises under the IWA. That statute forbids employers from retaliating against an employee who has reasonable cause to believe that certain information discloses a violation of the law and discloses that information "in a court, an administrative hearing, or before a legislative commission or committee, or in any other proceeding." 740 ILCS 174/15(a). The statute only protects an individual who "reports allegedly unlawful activity to some governmental authority or agency." *Riedlinger v. Hudson Respiratory Care, Inc. d/b/a Teleflex Med.*, 478 F. Supp. 2d 1051, 1054–55 (N.D. Ill 2007). The SAC does not allege that Pittner was fired in retaliation for reporting information to a governmental entity, so the SAC fails to state a claim under the IWA. Pittner concedes that point in her response brief and agrees that the claim should be dismissed. (Resp. in Opp'n at 4.) Furthermore, the IWA does not create a cause of action against individual supervisors, so Pittner could not state a claim under the

statute against Pittner. *See Cunliffe v. Wright*, 51 F. Supp. 3d 721, 740 (N.D. Ill. 2014). Therefore, the Court dismisses Pittner's IWA claim against both Defendants.

## IV.     Intentional Infliction of Emotional Distress Claim

In Count III, Pittner asserts a claim against Sanders for common law IIED. An IIED claim under Illinois law has three elements:

> (1) the conduct involved must be truly extreme and outrageous; (2) the actor must either intend that his conduct inflict severe emotional distress, or know that there is at least a high probability that his conduct will cause severe emotional distress; and (3) the conduct must in fact cause severe emotional distress.

*Honaker v. Smith*, 256 F.3d 477, 490 (7th Cir. 2001) (citing *McGrath v. Fahey*, 533 N.E.2d 806, 809 (Ill. 1988)).[6] Defendants contend that Pittner's common law IIED claim should be dismissed because it is preempted by an Illinois statute, the Illinois Human Rights Act ("IHRA").

If a civil rights violation is covered by the IHRA, Illinois law requires a plaintiff to present that claim to the Illinois Human Rights Commission ("the Commission") in the first instance, unless otherwise provided by law. *See* 775 ILCS 5/8-111. Moreover, the Illinois Supreme Court has held that a tort claim, such as IIED, that is "inextricably linked to a civil rights violation" covered by the IHRA must be brought before the Commission in the first instance. *See Maksimovic v. Tsogalis*, 687 N.E.2d 21, 24 (Ill. 1997). A claim is inextricably linked to a civil rights violation if "eliminating the civil rights component takes the air out of the case." *Sanglap v. LaSalle Bank, FSB*, 345 F.3d 515, 519 (7th Cir. 2003). Thus, for example, a negligent hiring and retention tort claim that is based on sexual harassment by a supervisor at work must be brought

---

[6] Defendants contend that Illinois law applies to Pittner's IIED claim. (Mem. in Supp. of Mot. to Dismiss at 11, Dkt. No. 53.) Pittner does not respond to that argument; in fact, her response brief does not discuss her IIED claim at all. Therefore, the Court will apply the law of Illinois, its forum state, to the IIED claim. *See Wood v. Mid-Valley Inc.*, 942 F.2d 425, 427 (7th Cir. 1991) ("The operative rule is that when neither party raises a conflict of law issue in a diversity case, the federal court simply applies the law of the state in which the federal court sits.").

before the Commission. *See Geise v. Phoenix Co. of Chi., Inc.*, 639 N.E.2d 1273, 1277–78 (Ill. 1994). The critical question is whether there is a basis for tort liability without "reference to the legal duties created by the [IHRA]." *Blount v. Stroud*, 904 N.E.2d 1, 9 (Ill. 2009). This issue could potentially deprive this Court of subject-matter jurisdiction over the IIED claim because the IHRA vests exclusive jurisdiction over claims arising under it to the Commission. *See Sanglap*, 345 F.3d at 519; *Geise*, 639 N.E.2d at 1276; *see also Finnane v. Pentel of Am., Ltd.*, 43 F. Supp. 2d 891, 902 (N.D. Ill. 1999) ("Being a jurisdictional limitation on the state courts, the exclusivity provision is also a limitation on this court.").

Using the standard from *Geise* and *Maksimovic*, the Seventh Circuit has held that IIED claims based on unlawful discrimination cannot be brought in court. *See Sanglap*, 345 F.3 at 519–20 (concerning disability discrimination in banking services); *Krocka v. City of Chicago*, 203 F.3d 507, 517 (7th Cir. 2000) (concerning disability discrimination in public employment); *Smith v. Chi. Sch. Reform Bd. of Trs.*, 165 F.3d 1142, 1151 (7th Cir. 1999) (concerning race discrimination in public employment). The key question, therefore, is whether Pittner alleges the elements of her common law IIED claim "without reference to the legal duties created by the [IHRA]." *Westphal v. City of Chicago*, 8 F. Supp. 2d 809, 812 (N.D. Ill. 1998) (quoting *Maksimovic*, 687 N.E.2d at 23). There must "still exist a foundation for the emotional distress claims even if the defendants' conduct was not discriminatory." *Id.* Courts in this District have "routinely dismiss[ed] Illinois state tort claims—particularly IIED claims—for lack of jurisdiction when brought in connection with allegations of a civil rights violation." *Ratley v. City of Aurora*, No. 97 C 3422, 1998 WL 30697, at *3 (N.D. Ill. Jan. 22, 1998) (internal quotation marks omitted) (collecting cases).

The IHRA covers race discrimination and retaliation in employment. 775 ILCS 5/2-102(a), 5/6-101(a). There is no foundation for Pittner's IIED claim if Defendants did not

discriminate or retaliate against her. Pittner's IIED claim restates the prior allegations in the complaint, which concern race discrimination and retaliation. (SAC ¶ 29.) Then, the SAC makes a series of conclusory statements about intent, proximate cause, acting within the scope of employment, and respondeat superior. (*Id.* ¶¶ 30–34.) It does not add any allegations that differentiate the IIED claim from Pittner's civil rights claims and it does not base the IIED claim on any legal duties independent of Defendants' duties under the IHRA. *Cf. Westphal*, 8 F. Supp. 2d at 812 ("Both of plaintiffs' emotional distress claims rely exclusively on the duty not to discriminate alleged in the discrimination claims. The plaintiffs present no additional factual allegations in either claim."). Pittner's IIED claim is thus inextricably linked to a claim for race discrimination and retaliation under the IHRA, and she cannot bring the IIED claim in court. To the extent Pittner has a claim, the Commission would have exclusive jurisdiction over that claim.

The Court thus dismisses Pittner's IIED claim against both Defendants without prejudice because the Court lacks subject-matter jurisdiction. In addition to the argument about the IHRA, Defendants argue in the alternative that Pittner has failed to adequately plead the first and third elements of an IIED claim under Illinois law. (Mem. in Supp. at 11–14.) Because it lacks jurisdiction over the claim, the Court need not address Defendants' alternative argument.

**CONCLUSION**

The Court grants in part and denies in part Defendants' motion to dismiss the Second Amended Complaint. (Dkt. No. 51.) Pittner's Title VII race discrimination claim against Advocate may proceed but the remaining claims are dismissed.

ENTERED:

Dated:  September 29, 2021

_____
Andrea R. Wood
United States District Judge